UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

NATHANIEL THOMAS,                          :
                                           :
              Plaintiff,                   :
                                           :
v.                                         :     NO.: 4:12cv00179
                                           :
CAROLYN W. COLVIN,                         :
Acting Commissioner of Social Security,    :
                                           :
              Defendant.                   :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff Nathaniel Thomas seeks judicial review of the
decision of the Commissioner of the Social Security
Administration ("Commissioner") denying his claim for disability
insurance under Title II of the Social Security Act.   42 U.S.C.
§§ 401-434.   He alleges several errors, including a claim that
the administrative law judge ("ALJ") improperly weighed a
Department of Veterans Affairs' ("VA") finding that he was
disabled.   This action was referred to the undersigned United
States Magistrate Judge pursuant to the provisions of 28 U.S.C.
§ 636(b)(1)(B).

        After reviewing the entire record, the undersigned finds
that the Fourth Circuit's decision in Bird v. Commissioner of
Social Security, 699 F.3d 337 (4th Cir. 2012) mandates remand to
permit the ALJ to re-evaluate Thomas' VA disability rating.

Accordingly, this report recommends that the final decision of the Commissioner be vacated and the matter remanded for further review.

## I.   PROCEDURAL BACKGROUND

On February 8, 2011, Thomas filed an application for disability insurance benefits ("DIB"), alleging disability beginning October 29, 2009, due to "individual unemployability," bilateral pes planus with heel spurs, left wrist tendonitis, a lumbosacral strain, lumbar degenerative disc disease, post-traumatic stress disorder ("PTSD"), and sleep apnea. (R. 15, 144-145, 177). The Commissioner denied his application initially (R. 84-86), and upon reconsideration. (R. 90-92). Thomas requested an administrative hearing (R. 93-95), which was conducted on February 27, 2012. (R. 31).

Administrative Law Judge ("ALJ") Tom Duann concluded that Thomas was not disabled within the meaning of the Social Security Act and denied his claim for DIB. (R. 12-23). The Appeals Council denied review of the ALJ's decision (R. 1-5), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on November 26, 2012, Thomas filed this action seeking judicial review of the Commissioner's final decision. (ECF No. 1). This case is now before the Court to resolve the parties' cross-motions for summary judgment. (ECF Nos. 11, 13).

2

## II.  <u>FACTUAL BACKGROUND</u>

Thomas, a veteran of the first Gulf War, was born on October 27, 1965, and was forty-four years old at the alleged onset of disability.  (R. 22, 144).  He testified that he is 6'5" and weighs 275 pounds.  (R. 34).  Additionally, Thomas served on active duty in the United States Army from October 3, 1985 to March 31, 2006 (R. 163).  During that time, he worked as a transportation specialist, ultimately retiring with the rank of Sergeant, first class.  (R. 42, 43).

Subsequently, Thomas continued to work in the transportation field.  He worked independently as a truck driver until 2008 when he was unable to pass the physical examination required for his commercial driving license certification (R. 304, 410).  Thereafter, he operated his own trucking business until October 2009.  (R. 21, 145).

In March 2009, Thomas began seeking increased disability assessments from the VA.  (R. 396).  In a decision dated September 21, 2009, the VA found that Thomas had service-connected disabilities of PTSD, gastro esophageal reflux disease ("GERD"), residual — facial laceration, sleep apnea, degenerative disc disease, hypertension, residual – right biceps injury, and left ankle sprain (R. 396-97).  Even so, the VA denied Thomas entitlement to "individual unemployability" because he had not been found unable to secure any gainful

3

employment as a result of his disabilities.  (R. 411).

Thomas appealed and sought further medical treatment.  In a January 7, 2011 decision, the VA granted him total disability effective September 17, 2010 (R. 393), and "individual unemployability" effective October 29, 2009.  (ECF No. 388-89). At the time of the hearing on his claim for Social Security Disability, Thomas received both VA disability benefits and his military retirement.

Much of the medical record relates to Thomas' alleged physical impairments.  Dr. Leroy Graham, Thomas' long-term primary care physician, examined Thomas on numerous occasions between October 2009 and May 2011.  (R. 242-63, 381-82, 412). Dr. Graham notes that he has treated Thomas' conditions of hypertension, GERD,[1] sleep apnea, and PTSD, with Thomas' "significant musculoskeletal issues tend[ing] to be the focus of most of his visit[s]."  R. 412.

Indeed, a frequent source of Thomas' complaints to Dr. Graham was his regular back pain.  (See R. 226, 229, 230-31. 233, 235, 239, 243, 245, 249, 251, 252, 258, 261, 263).  Though Dr. Graham found "normal ROM of spines" on 10/10/2008, Thomas' back pain appears to have consistently grown worse, with findings of "paraspinal lumbar tenderness" and "decreased ROM"

---

[1] With Dr. Graham's treatment, Thomas was able to maintain good control of his hypertension and GERD.  (R. 233, 235, 239, 241, 245, 249, 253, 258, 261, 263).

increasingly common.  (See, R. 228, 230, 232, 234, 243, 244, 248, 252).  Dr. Graham noted that as a result of Thomas' degenerative joint disease of the spine, he has "significant symptoms of pain, stiffness, numbness and spasms." (R. 225). To manage his pain, Dr. Graham prescribed Percocet, which Thomas uses "intermittently."  Id.

Thomas also complained to Dr. Graham of constant joint pain. (R. 240).  On October 23, 2009, Thomas stated he had pain in his left ankle and right foot, and Dr. Graham found that in addition to "paraspinal lumbar tenderness," Thomas also suffered from "[b]ilateral ankle tenderness," with a "slightly tender" left big toe.  Further, Thomas' left wrist had "mild medial tenderness on the dorsal surface," and his "left elbow [had] lateral epicondyle tenderness." (R. 243).

While Dr. Graham observed in 2010 that Thomas had "lost considerable weight" (R. 244) and "is feeling very good" (R. 248), Thomas nevertheless continued to visit him with complaints of chronic musculoskeletal pain, including back, ankle, and shoulder pain, through 2011. (R. 252, 256, 260, 262).  Indeed, given Thomas' condition, and at his request, Dr. Graham wrote a letter addressing his employment prospects on August 28, 2010. According to that letter, "Mr. Thomas suffers from significant physical limitation, lives with intense pain daily . . . . [and suffers from] emotional/psychiatric impairment [that] impact[s]

his sleep, focus, ability to concentrate, stability of mood, etc." Given those reasons, Dr. Thomas opined, it would be difficult for Thomas to find employment, and "[m]aintaining any job, if found would be very problematic." (R. 225).

Thomas also treated his physical ailments at the Veteran's Administration Medical Center ("VAMC") in Hampton, Virginia, from July 2009 through January 2012. (R. 264-380, 413-468). Indeed, much of the VA record is related to Thomas' request for benefits and not regular examination visits. (R. 21). Additionally, in reaching its decision, the ALJ acknowledged and considered aspects of these "extensive medical treatment records for the claimant." (R. 14).

On March 26, 2010, Thomas underwent an MRI of his lumbosacral spine. (R. 302). Noting "chronic back pain" as reason for the study, the treating physician found a disc herniation and a small sub-annular bulge.[2] Id. As a result of these findings, Thomas was diagnosed with a lumbosacral strain, with associated problems of degenerative disc disease and degenerative joint disease. (R. 303-04). A repeat-MRI of Thomas' lumbar spine was performed on October 8, 2010, and indicated a stable appearance as compared to the previous scan. (R. 372).

---

[2] The MRI also revealed a hemangioma, which the physician noted "should be clinically insignificant." (R. 302).

On September 17, 2010, Thomas underwent a Compensation and
Pension Examination at the VA regarding several of his physical
impairments. (R. 280-301). The VA's examination began with an
inspection of Thomas' feet, and revealed tenderness in the
arches and heels of both feet, inward bowing of the right and
left Achilles, and weight bearing lines over both great toes.
(R. 283-286). While no pronation was found in the left foot,
mild pronation was present in the right. (R. 284, 285).
Additionally, both feet had painful "midfoot malalignment," not
correctable through manipulation. (R. 284, 285). X-rays taken
on October 7, 2009, led to diagnoses of mild to moderate
osteoarthritis in the first MTP joint of the left foot resulting
in a bone spur, and mild degenerative changes in the first MTP
joint of the right foot resulting in pes planus with heel spurs.
(R. 286-88).

Next, Thomas' joints were evaluated. (R. 289-96). Films
of his ankles taken on August 13, 2009 had ruled out any bone-
related impairment. (R. 377). X-Rays taken a year later, in
August and September 2010, verified the original findings. (R.
293-94). The assessment of his bilateral ankle pain on
September 17, 2010, however, revealed that Thomas suffered from
continuous pain in both ankles at a level of "8 out of 10." (R.
289). To combat the pain, Thomas took tramadol and Percocet
and wore braces on both ankles intermittently. (R. 289-91).

7

Thomas was ultimately diagnosed with left and right ankle strains. (R. 295-96).

Thomas' left wrist tendonitis was also examined. (R. 290, 294-95). X-Rays taken on August 13, 2009 revealed a mild degenerative change in the radiocarpal joint. (R. 376-77). Film taken during the September 17, 2010 exam, in turn, found "no significant degenerative changes" and was overall a "normal study." (R. 294-95). Even so, Thomas alleged his wrist was becoming progressively worse, requiring him to wear a brace daily due to consistent pain at a level of "9 out of 10 with activity" and "7 out of 10 at rest." (R. 290). Based on his September 2010 exam, he was diagnosed with a left-wrist strain, with tendonitis being a problem associated with the diagnosis. (R. 295).

While the provided VA records do not appear to contain Thomas' sleep studies, they do indicate that he was diagnosed with obstructive sleep apnea. (R. 358). Further, as of October 12, 2010, Thomas had worn the CPAP device 289 days out of 293, at an average of eight hours a night. Due to the lack of evidence in the record to the contrary, the ALJ determined that nothing suggests the CPAP machine is not adequately managing Thomas' sleep apnea problems.

With regard to his mental condition, Thomas primarily treated with Dr. Elaine M. Becher of the Hampton VAMC. (R. 308-

11, 349-53, 354-58, 419-23, 441-49, 451-54). Notes from each of her interactions with Thomas, all relatively identical, reveal that Dr. Becher found no evidence of psychotic symptoms and considered Thomas to be "cooperative," with no suicidal or homicidal ideations. Id. Moreover, he had an appropriate affect and decent insight and judgment. Id. Nevertheless, Dr. Becher's notes also reflect that Thomas suffered from a number of stressors – unemployment, raising two daughters, social isolation, and an irritable mood – and had been developing several PTSD symptoms – including recurrent nightmares, avoidance of groups of people and war-related media, and increased sensitivity to particular noises – since 1991. Id. She diagnosed him with chronic PTSD and depressive disorder, not otherwise specified (NOS), and assigned a global assessment of functioning ("GAF") score of 55.[3]

In addition to the medical evidence, Thomas testified that he is unable to perform full-time employment because of a combination of his mental and physical issues. (R. 40). He visits a psychiatrist every eight weeks and is still taking

---

[3] The GAF scale is a numeric scale (0 through 100) sometimes used for reporting the clinician's judgment of an individual's overall level of functioning at a specific point in time. A GAF score in the 51-60 range indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders Text Revision 34 (4th ed. 2000). In its later revision, the DSM stopped utilizing the GAF scale, due in part to its "conceptual lack of clarity." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

medication for sleep, depression, and PTSD.  Id.  He is "pretty much isolated," endures uncontrollable reactions to certain smells and sounds, and is "always in high-mode alert."  (R. 41). He testified that on an average day he primarily stretches and reads (R. 36), and he regrets that he cannot do the things with his family that he once did.   (R. 41, 43).   He did report regular driving when needed, but indicated that the farthest he had travelled in the last year was Richmond.   (R. 35). Additionally, Thomas testified that he was two classes away from finishing a sociology degree from an online university (R. 36), and he volunteers two hours each month with the VA to help others with PTSD. (R.40).

The ALJ also heard from Edith Edwards, a vocational expert ("VE").   The VE described Thomas' prior employment as a truck driver/supervisor with the military and truck driver/business owner following his service as medium, skilled positions.   (R. 48).   The VE testified, in response to hypothetical limitations framed by the ALJ,[4] that Thomas could perform the jobs of cleaner of housekeeping, laundry worker, and unskilled office clerk. Additionally, the VE stated that no jobs would be available for

---

[4] The ALJ asked the VE to provide a range of light and sedentary work, assuming an individual with the following limitations: " light work; frequent ramps or stairs; occasional ladder, ropes, and scaffolds; frequent stooping, kneeling, crouching and crawling; simple, routine work; low stress . . . defined as occasional changes to the work setting, occasional . . . work-related decision-making; and occasional interaction with the public, coworkers, and supervisors."  (R. 49).

a hypothetical individual who, due to a combination of medical conditions and the previous limitations set forth by the ALJ (i.e., light and sedentary work conditions) is unable to work a forty-hour, five-day work-week. (R. 50).

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to

11

whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A).  To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous

12

work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production

13

rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

A.  The ALJ's Decision

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Thomas had not engaged in substantial gainful activity since October 29, 2009, the alleged onset date; (2) Thomas had severe impairments of lumbar degenerative disc disease, PTSD, depression not otherwise specified, and obesity; (3) his combination of impairments did not meet one of the listed impairments in Appendix 1; (4) Thomas had the RFC to perform light work with additional limitations. Finally, although the ALJ concluded that Thomas could not perform his past relevant work, he did identify jobs which exist

14

in substantial numbers in the national economy which Thomas could perform.  (R. 14-22).

In his motion for summary judgment, Thomas argues four errors by the ALJ which require remand.  First, he claims the ALJ failed to properly weigh the VA finding that he was completely disabled.  He also contends that the ALJ improperly rejected Dr. Graham's opinion.  Additionally, Thomas argues that the ALJ failed to properly consider the combined effects of his impairments.  Lastly, Thomas maintains that the ALJ improperly relied on the vocational expert's testimony that was in direct conflict with the description of each job's skill and reasoning requirements as set forth in the Dictionary of Occupational Titles.

For the reasons set forth in detail below, this report concludes that a post-hearing change in Fourth Circuit precedent mandates remand for the ALJ to perform a more detailed analysis of Thomas' VA disability rating.  Because this analysis necessarily affects the ALJ's other findings concerning Thomas' RFC and ability to work, the undersigned makes no finding or recommendation concerning the ALJ's original conclusions on those issues.

**B.**   **The Commissioner's final decision did not adequately evaluate evidence of the VA's prior finding that Thomas was completely disabled in light of new Fourth Circuit precedent requiring that the VA's finding be given "substantial weight."**

At the time of the hearing before the ALJ, the VA had found Thomas disabled and unemployable.  Though the ALJ had access to extensive VA medical records, it gave little weight to the VA's disability rating, explaining that he "may not adopt the 100% disabled finding by the VA to a finding of disability in this decision."  (R. 22).  He further observed that a finding of disability for other benefit programs results purely from the application of their rules.  Because Social Security rules must be applied in this case, he concluded, "the Veteran's Administration findings are not binding . . . ."  Id.

At the time of the hearing and presently, Social Security regulations require the ALJ to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases."  Williams v. Astrue, No. 5:11cv286, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012) (unpublished) (quoting SSR 06-3P).  In this case, the ALJ's brief explanation was commensurate with the evidence in the record before him concerning the VA's determination, and Fourth

16

Circuit precedent at the time.  See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, No. 3:10cv1316, 2012 WL 75046, at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA determination is entirely reasonable.").

    After the hearing and the Appeals Council's denial of review, however, the Fourth Circuit decided Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012).  The new opinion held that the SSA must give "substantial weight" to a VA disability rating.  Id. at 343.  Like Williams, the Bird opinion acknowledged that the SSA and VA apply different standards, but also noted that both "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and both require extensive medical documentation.  Id.  As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other."  Id.  The opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [] the effective date of coverage . . . under the two programs will likely vary."  Id. As a result, even under the new rule announced in Bird, the Commissioner may give less weight to a VA rating "when the

record before the ALJ clearly demonstrates that such a deviation is appropriate." Id.

Predictably, Thomas' Motion for Summary Judgment argues that the ALJ erred by not according "substantial weight" to the VA's disability determination. (ECF No. 12 at 19-20). As a result, he argues that Bird requires reversal. Id. at 22. The Commissioner, to the contrary, contends that the ALJ already afforded careful consideration to the VA's disability rating and clearly demonstrated the reasons for giving it little weight. Specifically, he contends that Bird does not apply to the ALJ's analysis of Thomas' disability because the VA's decision lacked a discussion of specific physical and mental capabilities necessary for the SSA's complete evaluation, and "an ALJ may give less weight to the VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Bird, 699 F.3d at 343.

It is true that the ALJ carefully evaluated all of the medical evidence and considered the VA's rating to the extent the evidence presented it. However, his analysis was based on the law as it existed before the Fourth Circuit addressed "the precise weight that the SSA must afford to a VA disability rating." Bird, 699 F.3d at 343. After carefully reviewing the ALJ's analysis and the record, the undersigned is unable to conclude that the ALJ's analysis after Bird is supported by

substantial evidence, or that the ALJ would have reached the same conclusion in light of the new standard.

Importantly, the record included extensive evidence of the VA's decision-making process and the conditions it relied upon in concluding Thomas was unemployable. (R. 165-172). While the ALJ referenced the VA's determination, he did not discuss its analysis in detail, instead concluding only that the result was "not binding" on the Commissioner. Without more, the undersigned cannot determine that the ALJ intended to deviate from the Fourth Circuit's new presumption.

This is because prior to Bird, the law did not require any specific weight be assigned to the VA's finding. Bird, 699 F.3d at 343 ("We have not previously addressed the precise weight that the SSA must afford to a VA disability rating."). Applying this law, the ALJ in this case stated that he "may not adopt the 100% disabled finding by the VA to a finding of disability in this decision" because "the [VA] findings are not binding in this case." (R. 22). The Commissioner, in briefing before this Court, has correctly observed that SSA determinations are based on different rules with different burdens of proof, and thus he argues Bird does not apply because those different standards and different rules "clearly demonstrated" the ALJ's intention to depart from the presumption of substantial weight. But, it is not clear that the ALJ's extensive treatment of Thomas' VA

medical records was intended to clearly demonstrate the reasons for according the VA's disability determination little weight rather than substantial weight.

The Fourth Circuit has now made it clear that the ALJ must give the VA's disability determination "substantial weight" or explicitly detail the reasons for giving it less weight. See Bird, 699 F.3d at 343. The reasons cited by the Commissioner in Thomas' case - different rules and different standards - would apply to every case and thus cannot be relied upon to avoid scrutiny of the VA decision under Bird's presumptive standard. Because the ALJ did not know to conduct this analysis, and did not in fact conduct it, the undersigned is unable to determine whether substantial evidence supports the ALJ's denial of benefits. Therefore, remand is necessary in order to allow the ALJ to weigh the evidence of Thomas' VA rating in accordance with Bird.

This is not to suggest that the ALJ's conclusions on RFC could not be sustained under the new standard. The Fourth Circuit specifically identified the fact that "the SSA employs its own standards for evaluating a claimant's alleged disability" as one ground which may justify deviation from substantial weight. The ALJ may conclude that those different standards are material to Thomas' claim for disability and rightly justify departing from substantial weight. Here,

20

however, the ALJ performed the analysis from a different starting point, and as a result, remand is the appropriate remedy.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY the Commissioner's Motion for Summary Judgment (ECF No. 13), GRANT Thomas' Motion for Summary Judgment (ECF No. 11), and vacate the prior decision and remand the case for further consideration in light of the changes in law concerning Thomas' disability rating, and its impact on this claim for benefits.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 11th, 2013